IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| DANIEL DILL, JOSEPH CANFIELD, ) <br> and LAWRENCE TAYLOR TULLY, II, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> PRECISION PIPELINE, LLC, a ) <br> foreign limited liability corporation; ) <br> MOUNTAIN VALLEY PIPELINE, LLC, ) <br> a foreign limited liability corporation; ) <br> EQT CORP., a foreign corporation doing ) <br> business as EQM Midstream Partners, LP; ) <br> and International Union of Operating ) <br> Engineers (AFL-CIO). ) <br> ) <br> Defendants. ) | C.A. No. 2:21-cv-384 <br> Hon. John T. Copenhaver |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS MOUNTAIN VALLEY PIPELINE, LLC
AND EQT CORPORATION'S JOINT MOTION TO DISMISS COMPLAINT**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1
II. BACKGROUND ................................................................................................................. 2
III. STANDARD ....................................................................................................................... 3
IV. ARGUMENT ...................................................................................................................... 4
    A. Plaintiffs' State Law Claims Are Preempted by the LMRA. .................................. 4
        (i) Plaintiffs' State Law Claim for Tortious Interference is Preempted .......... 4
        (ii) Plaintiffs' State Law Claims for Breach of Contract and Breach of the Duty of Fair Representation Are Preempted. .............................................. 6
    B. Plaintiffs Cannot Pursue Viable Federal Law Claims Against Defendants MVP and EQT. ................................................................................................................... 7
        (i) The Fourth Circuit Does Not Recognize a Federal Cause of Action for Tortious Interference With a Collective Bargaining Agreement. ............... 8
        (ii) Plaintiffs Cannot Pursue Federal Breach of Contract and Breach of Fiduciary Duty Claims as they are Time-Barred by a Six-Month Limitations Period. ....................................................................................... 9
V. CONCLUSION .................................................................................................................. 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allis-Chalmers Corp.* v. *Lueck*,
 471 U.S. 202 (1985) ..................................................................................................................2, 4

*Arnold v. Cabot Corp.*,
 2000 U.S. Dist. LEXIS 7709 (N.D.W. Va. May 8, 2000) ..........................................................5

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ....................................................................................................................4

*Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*,
 390 U.S. 557 (1968) ....................................................................................................................2

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ....................................................................................................................4

*BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*,
 132 F.3d 824 (1st Cir. 1997) .......................................................................................................7

*Breininger v. Sheet Metal Workers Int'l Assoc.*,
 493 U.S. 67 (1989) ......................................................................................................................9

*Davis v. Bell Atl.-W. Virginia, Inc.*,
 110 F.3d 245 (4th Cir. 1997) ......................................................................................................6

*DelCostello v. Int'l Bhd. of Teamsters*,
 462 U.S. 151 (1983) ....................................................................................................................9

*E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*,
 213 F.3d 175 (4th Cir. 2000) ......................................................................................................4

*Foy v. Giant Food Inc.*,
 298 F.3d 284 (4th Cir. 2002) ...................................................................................................6, 9

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*,
 463 U.S. 1 (1983) ........................................................................................................................6

*Giarratano v. Johnson*,
 521 F.3d 298 (4th Cir. 2008) ......................................................................................................4

*Gilfillan v. Celanese Ag.*,
 24 F. App'x 165 (4th Cir. 2001) ...............................................................................................10

*Harmon v. Am. Elec. Power Serv. Corp.*,
 371 F. Supp. 2d 804 (S.D. W. Va. 2005) ...............................................................................9, 10

*International Union, United Mine Workers v. Covenant Coal Corp.*,
 977 F.2d 895 (4th Cir. 1992) ...................................................................................................5, 8

*Lee v. Consolidated Coal Co.*,
 178 F.3d 1284 (4th Cir. 1999) ....................................................................................................9

*Lingle v. Norge Div. of Magic Chef, Inc.*,
    486 U.S. 399 (1988) ........................................................................................................... 4

*McCormick v. AT&T Technologies, Inc.*,
    934 F.2d 531 (4th Cir. 1991) ............................................................................................. 4

*NLRB v. Allis–Chalmers Mfg. Co.*,
    388 U.S. 175 (1967) ........................................................................................................... 7

*O'Donnell v. Boggs*,
    611 F.3d 50 (1st Cir. 2010) ................................................................................................ 2

*Peterson v. Air Line Pilots Ass'n, Int'l*,
    759 F.2d 1161 (4th Cir. 1985) ........................................................................................... 7

*Scott v. Va. Port Auth.*,
    2018 U.S. Dist. LEXIS 53098 (E.D. Va. Feb. 7, 2018) ............................................. 10, 11

*Starnes v. Veeder-Root*,
    2017 U.S. Dist. LEXIS 31736 (M.D.N.C. Mar. 7, 2017) ............................................... 10

*Textile Workers* v. *Lincoln Mills*,
    353 U.S. 448 (1957) ........................................................................................................... 2

*United Steelworkers of America v. Rawson*,
    495 U.S. 362 (1990) ........................................................................................................... 4

*Vaca v. Sipes*,
    386 U.S. 171 (1967) ........................................................................................................... 7

*Vadino v. A. Valey Engineers*,
    903 F.2d 253 (3d Cir. 1990) .............................................................................................. 9

**Statutes**

29 U.S.C. § 159(a) ...................................................................................................................... 6

29 U.S.C. § 185 ................................................................................................................. *passim*

29 U.S.C. § 185(a) ...................................................................................................................... 2

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ............................................................... 1, 3, 4

Defendants Mountain Valley Pipeline, LLC ("MVP") and EQT Corporation ("EQT")[1], through their undersigned counsel, hereby file the within Memorandum of Law in Support of their Joint Motion to Dismiss the Complaint filed by Plaintiffs Daniel Dill, Joseph Canfield, and Lawrence Taylor Tully, II (collectively, "Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I.     **INTRODUCTION**

Plaintiffs' Complaint arises out of the purported termination of their employment on or about July 11, 2019, by their employer Precision Pipeline, LLC ("Precision"). Plaintiffs allege that MVP and EQT tortuously interfered with their rights under a collective bargaining agreement ("CBA") by allegedly directing Precision (as a party to the CBA) to discharge them without just cause and without affording them their rights under the CBA.

In their Complaint, Plaintiffs assert state law claims for tortious interference, breach of contract, and breach of duty of fair representation. The Complaint is not clear as to which counts pertain to MVP and EQT. While the Complaint only mentions MVP and EQT in Count II, alleging tortious interference, in its introductory paragraph the Complaint states that Plaintiffs are asserting a "wrongful discharge claim premised on a beach of the CBA and tortious interference by third parties to a union contract." (Compl., intro.).

In any event, regardless of whether MVP and EQT are implicated by all three claims or just Count II, alleging tortious interference, Plaintiffs' Complaint should be dismissed as all three state law claims are preempted by applicable federal labor law, including Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which operates to preempt any

---

[1]     In the case caption, Plaintiffs characterize EQT Corporation as a "foreign corporation doing business as EQM Midstream Partners, LP." In moving to dismiss the Complaint, Defendants Mountain Valley Pipeline, LLC and EQT Corporation make no admission that EQM Midstream Partners, LP is a d/b/a of EQT Corporation, which it is not.

state law claims concerning the interpretation and application of collective bargaining agreements.[2]

Plaintiffs also cannot refashion their state law claims as federal claims. The Fourth Circuit does not recognized a federal common law claim for tortious interference with a collective bargaining agreement against a non-signatory. And Plaintiffs are otherwise time-barred by the six-month statute of limitations for breach of contract and/or breach of duty of fair representation claims under Section 301 of the LMRA.

For these reasons, and those set forth more fully below, Plaintiffs' Complaint should be dismissed with prejudice as to Defendants MVP and EQT.

## II.     BACKGROUND

The following facts are undisputed for purposes of Defendants' joint motion to dismiss.[3]

Plaintiffs were employees of Defendant Precisions Pipeline, LLC ("Precision") and members of the Operating Engineers Union, Local 132 and the International Union of Operating Engineers ("Union"). (Compl. ¶¶ 2-10). As members of the Union, Plaintiffs' employment was covered by a collective bargaining agreement between the Union and Precision (the "CBA").

Plaintiffs worked out of Precision's Summersville Office in Nicholas County, where they serviced Precision's clients, including MVP. Plaintiffs worked on an MVP pipeline project

---

[2]    Section 301 of the LMRA confers federal court jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Based on this provision, the Supreme Court has deemed collective bargaining agreements "creatures of federal law, whatever the intent of the parties." *O'Donnell v. Boggs*, 611 F.3d 50, 53 (1st Cir. 2010) (citing *Textile Workers* v. *Lincoln Mills*, 353 U.S. 448, 451 (1957)). The Supreme Court treats Section 301 as a warrant both for removing to federal court state law claims preempted by Section 301 and then dismissing them. *Allis-Chalmers Corp*. v. *Lueck*, 471 U.S. 202, 220-21 (1985); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 559-60 (1968).

[3]    Defendants MVP and EQT do not admit any of the allegations of Plaintiffs' Complaint but accept them as true for purposes of this motion.

pursuant to a master services agreement between Precision and MVP, whereby Precision agreed to furnish operators such as Plaintiffs and other personnel for the construction of a pipeline near Richwood, Nicholas County, West Virginia. (Compl. ¶¶ 2-10, 40-41).[4]

On July 11, 2019, Precision terminated the employment of Plaintiffs. (Compl. ¶1). Plaintiffs allege, upon information and belief, that Precision terminated their employment at the direction of Defendants MVP and/or EQT. (Compl. ¶ 1).

On the same day as the termination of their employment, Plaintiffs each filed paperwork with the Union to initiate a grievance for their alleged wrongful terminations, and requested that the Union participate in the grievance proceedings outlined under the CBA. (Compl. ¶ 22, 35). Though the Union retained an attorney to represent Plaintiffs, the Union did not file a grievance or seek arbitration as to the reasons and cause for the termination of Plaintiffs' employment. (Compl. ¶ 24). Instead, the Union caused an unfair practice charge to be filed with the National Labor Relations Board ("NLRB"), which was eventually dismissed. (Compl. ¶ 25-26, 36, 38).

On July 2, 2021 – almost two years after Precision terminated their employment – Plaintiffs filed the instant Complaint, asserting claims for breach of contract, tortious interference, and breach of the duty of fair representation.

### III.     STANDARD

Fed. R. Civ. P. 12(b)(6) requires dismissal of allegations which fail "to state a claim upon which relief can be granted." A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To survive a motion to

---

[4]      Plaintiffs also allege that Precision and EQT were engaged in a similar "joint venture or enterprise" for the construction of a pipeline. (Compl. ¶¶ 40-41). EQT, however, did not separately contract with Precision, nor was EQT involved with the construction of the pipeline near Richwood, Nicholas County, West Virginia, where Plaintiffs worked. In any event, the claims against EQT should be dismissed for the same reasons as the claims against MVP – because they are preempted by the Labor Management Relations Act and are otherwise time barred.

dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In assessing a Rule 12(b)(6) motion, the Court must "take the facts in the light most favorable to the plaintiff," but "need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* (citing *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

## IV.  ARGUMENT

### A.  Plaintiffs' State Law Claims Are Preempted by the LMRA.

In their Complaint, Plaintiffs assert various state law claims "filed under and pursuant to the common law and statutory law of the State of West Virginia." (Compl., intro.). Plaintiffs' state law claims are preempted by Section 301 of the LMRA, 29 U.S.C. § 185, because deciding these claim will necessarily require the Court to interpret the CBA applicable to Plaintiffs' employment.

The law is clear that "an application of state law is preempted by Section 301 . . . if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988); *see also McCormick v. AT&T Technologies, Inc.*, 934 F.2d 531, 534-35 (4th Cir. 1991) ("State law is thus 'pre-empted' by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective bargaining agreements" (*quoting United Steelworkers of America v. Rawson*, 495 U.S. 362 (1990)). This is to ensure that a uniform body of federal law governs the interpretation and enforcement of collective bargaining agreements. *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 209-210 (1985).

*(i)  Plaintiffs' State Law Claim for Tortious Interference is Preempted*

4

Plaintiffs' state law claim for tortious interference against Defendants MVP and EQM contained in Count II of the Complaint is preempted by Section 301 of the LMRA, because deciding this claim (where Plaintiffs allege that MVP and EQT interfered with their rights under the CBA) would necessarily require interpretation of the CBA applicable to Plaintiffs' employment. *See International Union, United Mine Workers v. Covenant Coal Corp.*, 977 F.2d 895 (4th Cir. 1992).

In *Covenant Coal*, the Fourth Circuit considered a similar claim for tortious interference brought under Virginia state law, and concluded that the plaintiff's state law claim was preempted by the LMRA because the "state cause of action [for tortious interference] would require a court to interpret the collective bargaining agreements between the Union and [employer] to determine whether [the third party] caused a breach of those agreements." *Covenant Coal*, 977 F.2d at 899.

Similarly, in *Arnold v. Cabot Corp.,* 2000 U.S. Dist. LEXIS 7709 (N.D.W. Va. May 8, 2000), the District Court, relying on the Fourth Circuit's analysis in *Covenant Coal*, held that a plaintiff's claim for tortious interference brought under West Virginia state law was likewise preempted by Section 301 of the LMRA "because the claim necessarily requires the Court to interpret the CBA in determining whether all of the elements of the state law claim have been met." *Id*. at *23. The District Court reasoned that to decide the tortious interference claim it "would need to look at the CBA to determine the nature of the employment contract with which the [third parties] allegedly tortuously interfered," and therefore concluded that the claim was preempted under the LMRA. *Id*. at *19-23.

Like the plaintiffs in *Covenant* and *Arnold*, Plaintiffs also allege that a third party non-signatory to the CBA (MVP and/or EQM) interfered with Plaintiffs' rights, giving rise to a

5

breach under the applicable CBA. (Compl. ¶ 57). Because this Court cannot decide Plaintiffs' tortious interference claim without interpreting the CBA, Plaintiffs' claim for tortious interference brought against MVP and EQM is preempted by Section 301 of the LMRA, and for this reason should be dismissed.

> *(ii) Plaintiffs' State Law Claims for Breach of Contract and Breach of the Duty of Fair Representation Are Preempted.*

Insofar that Defendants MVP or EQM are implicated by Plaintiffs' state law claims for breach of contract or for breach of the duty of fair representation asserted against Precision and the Union in Counts I and III of the Complaint, these too should be dismissed because they are preempted by federal labor law.[5]

First, as with a state law claim for tortious interference, Section 301 of the LMRA preempts state law claims for breach of a contract where a breach of the collective bargaining agreement is asserted. *See Davis v. Bell Atl.-W. Virginia, Inc.*, 110 F.3d 245, 248 (4th Cir. 1997) ("[Section] 301 of the LMRA clearly preempts" a "breach of contract claim [that] rests on the collective-bargaining agreement itself"); *Foy v. Giant Food Inc.*, 298 F.3d 284, 287 (4th Cir. 2002) (The 'preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983)).

Second, Plaintiffs are barred from asserting any state law claim (whether a claim for breach of contract or a related breach of fiduciary duty claim) that implicates a union's duty of fair representation arising out of Section 9(a) of the National Labor Relations Act ("NLRA"). 29 U.S.C. § 159(a). Section 9(a) of the NLRA grants labor unions the exclusive status of bargaining

---

[5] Plaintiffs fail to state claims for breach of contract against MVP and EQT for the additional reason that neither MVP nor EQT were parties to the CBA. (*See* Compl. ¶ 40 (conceding that "Defendants MVP and EQT . . . were not parties to the CBA")).

representative with regard to collective bargaining relationships, and with this exclusive status comes the judicially created duty of fair representation, which serves to check arbitrary, discriminatory, or bad faith conduct by a labor union. *See NLRB v. Allis–Chalmers Mfg. Co.,* 388 U.S. 175, 181 (1967); *Vaca v. Sipes,* 386 U.S. 171 (1967). The federal duty of fair representation preempts state law clams "whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation" arising under the NLRA. *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*, 132 F.3d 824, 830 (1st Cir. 1997); *see also Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1169–70 (4th Cir. 1985) ("The importance of the federal interest is such that the duty of fair representation cause of action is governed exclusively by federal law even when the claim is filed in state court").

Here, Plaintiffs allege a breach of their rights under the CBA arising out of Precision's decision to terminate their employment and the Union's alleged refusal/failure to file a grievance on behalf of Plaintiffs in relation to their terminations. (Compl. ¶¶ 54-55). Regardless of whether Plaintiffs' claims implicate an express duty provided for in the CBA or an implied duty arising out of the Union's status as a bargaining representative, the claims are completely preempted. *See Peterson*, 759 F.2d at 1170-71 (holding that the plaintiff's state law claims were preempted where the state claims were "essentially identical to [a federal] duty of fair representation claim" and noting that "in light of the significant overlap of the state and federal claims, it becomes apparent that [the plaintiff] [impermissibly] seeks to pursue the state claims merely to take advantage of more liberal remedies").

  **B. Plaintiffs Cannot Pursue Viable Federal Law Claims Against Defendants MVP and EQT.**

As set forth above, Plaintiffs' state law claims should be dismissed because they are completely preempted by federal labor law. Moreover, even if Plaintiffs were to refashion their

state law claims as federal law claims, Plaintiffs' Complaint still would fail to state any claim upon which relief can be granted.

    *(i)    The Fourth Circuit Does Not Recognize a Federal Cause of Action for Tortious Interference With a Collective Bargaining Agreement.*

Plaintiffs cannot state a claim for tortious interference against MVP or EQT under federal law. *See Covenant Coal*, 977 F.2d 895 (4th Cir. 1992).

In *Covenant Coal*, the Fourth Circuit examined whether Section 301 of the LMRA conferred federal jurisdiction to hear claims against non-signatories to a collective bargaining agreement for tortious interference with that agreement. The Court held that plaintiffs could not bring a Section 301 claim against a non-signatory to the contract on the grounds that Section 301 only allows "suits for violations of contracts between an employer and a labor organization . . . ." *Id*. at 897 (quoting 20 U.S.C. § 185). The Court reasoned that because a third-party "is not a party to [a collective bargaining agreement] . . . it cannot be sued under the jurisdiction established by Section 301." *Id*. at 899.

The Court in *Covenant Coal* recognized the "apparent paradox" whereby Section 301 of the LMRA bars a federal cause of action for tortious interference with contract, and simultaneously preempts the identical state law cause of action. *Id*. at 899-890. The Court, however, noted that the result is not as harsh as it would initially appear given that parties remain free to bring suit directly for breach of the bargaining agreements (subject to the applicable six-month statute of limitations), and can also proceed by means of an unfair labor practice charge with the NLRB. *Id*. at 890. Accordingly, the Court affirmed that "section 301 of the LMRA serves both to bar a federal cause of action for tortious interference with a collective bargaining agreement against a non-signatory of that agreement, and to preempt a similar cause of action premised on state law." *Id*. at 899.

Here, there is no dispute that MVP and EQT were non-signatories to the CBA that is the subject of Plaintiffs' tortious interference claim. (Compl. ¶ 40). Accordingly, based on the above Fourth Circuit precedent, Plaintiffs cannot state a claim under either state or federal law for tortious interference against MVP and/or EQT.

*(ii)    Plaintiffs Cannot Pursue Federal Breach of Contract and Breach of Fiduciary Duty Claims as they are Time-Barred by a Six-Month Limitations Period.*

Any effort by Plaintiffs to refashion their breach of contract and breach of fiduciary duty claims as federal claims would also be futile, as these claims are time-barred.

If presented as federal claims, Plaintiffs' breach of contract and breach of fiduciary duty claims together would constitute a "hybrid claim" arising under Section 301 of the LMRA. 29 U.S.C. § 185.[6] The statute of limitations in hybrid Section 301/fair representation cases is six months. *DelCostello*, 462 U.S. at 172; *see also Foy v. Giant Food Inc.*, 298 F.3d 284, 291 (4th Cir. 2002) (applying six-month statute of limitations to a Section 301 hybrid action alleging that employer breached a collective bargaining agreement in discharging employee). For hybrid Section 301/fair representation claims, the employee's claim accrues, and the statute of limitations begins to run, when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation. *See Harmon v. Am. Elec. Power Serv. Corp.*, 371 F. Supp. 2d 804, 813 (S.D. W. Va. 2005); *Lee v. Consolidated Coal Co.*, 178 F.3d 1284 (4th Cir. 1999). "Generally, this will mean when [the plaintiff] discovered or

---

[6]    Because a claim for breach of a collective bargaining agreement against an employer and a claim for a breach of fair representation against a union are "inextricably interdependent," the Supreme Court has made clear that "an allegation that the union has breached its duty of fair representation is a necessary component of the § 301 [breach of the collective bargaining agreement] claim against the employer." *Breininger v. Sheet Metal Workers Int'l Assoc.*, 493 U.S. 67, 82-83 (1989); *accord Vadino v. A. Valley Engineers*, 903 F.2d 253, 261 (3d Cir. 1990). Therefore, to prevail on a "hybrid" Section 301 claim, a plaintiff must prove both: (1) a breach of the duty of fair representation owed by the union; and (2) a breach of the CBA by the employer. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983).

should have discovered the union chose not to represent him in the grievance process." *Scott v. Va. Port Auth.*, 2018 U.S. Dist. LEXIS 53098, at *15 (E.D. Va. Feb. 7, 2018) (citing *Gilfillan v. Celanese Ag.*, 24 F. App'x 165, 167 (4th Cir. 2001)).

Here, Plaintiffs were aware that the Union chose not to proceed with the grievance process well before they filed their Complaint on July 2, 2021. Plaintiffs were discharged nearly two years earlier, on July 11, 2019. Upon their discharge, Plaintiffs immediately notified the Union and submitted paperwork to initiate the grievance process. The Union, however, did not file a grievance on their behalf or seek arbitration. Instead, the Union caused an unfair practice charge to be filed with the National Labor Relations Board, which was eventually dismissed. As months passed following their discharge without any activity by the Union to initiate the grievance process, Plaintiffs should have known that the Union had decided not to proceed with a grievance on their behalf. *See Harmon v. Am. Elec. Power Serv. Corp.*, 371 F.Supp.2d 804, 813 (S.D. W. Va. 2005) (dismissing plaintiff's claims as time-barred because the plaintiff, who waited two years after she was discharged to file suit, "should have known well before the case was filed" that the Union had not initiated the grievance process or filed for arbitration); *Scott v. Va. Port Auth.*, 2018 U.S. Dist. LEXIS 53098, at *17 (E.D. Va. Feb. 7, 2018) (holding that a delay of nine months without the union filing a grievance was sufficient to put the plaintiff on notice that the union was not pursuing the plaintiff's claims); *see also Starnes v. Veeder-Root*, 2017 U.S. Dist. LEXIS 31736, at *32 (M.D.N.C. Mar. 7, 2017) ("To say . . . that the running of the statute will be postponed indefinitely until actual notification is received from the Union or the employer, would be contrary to the policy of prompt resolution. Lack of notification would leave claims unresolved indefinitely and leave the procedure open to all the vices which statutes of limitations were intended to eliminate.").

A delay of nine months was sufficient to place the plaintiff in *Scott* on notice that the union was not going to grieve or arbitrate his claim. *See Scott*, 2018 U.S. Dist. LEXIS 53098, at *17. Here, Plaintiffs waited almost two years following their termination to file suit. Accordingly, the six-month statute of limitations applies to bar any federal breach of contract or breach of fiduciary duty claims that Plaintiffs may seek to pursue. *Id*.

## V.   CONCLUSION

For the reasons stated herein, Defendants MVP and EQT respectfully request that this Court grant their Motion and dismiss Count II of Plaintiffs' Complaint. MVP and EQT further request that the Court dismiss Counts I and III of Plaintiffs' Complaint insofar that these claims implicate or are otherwise directed to MVP and/or EQT.

Dated:  September 6, 2021                Respectfully submitted,

*/s/ Matthew S. Casto*
Matthew S. Casto, Esq.
**BABST CALLAND**
300 Summers Street, Suite 1000
Charleston, WV 25301
Phone: (681) 205-8950
Fax: (681) 205-8814
Email: mcasto@babstcalland.com

and

Christian Antkowiak, Esq. (*PA 209231*)
christian.antkowiak@bipc.com
William Lewis, Esq. (*PA 316527*)
william.lewis@bipc.com

**BUCHANAN INGERSOLL & ROONEY PC**
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
Phone: 412-562-8800
Fax: 412-562-1041

11

*Attorneys for Defendants Mountain Valley Pipeline, LLC, and EQT Corporation, and EQM Midstream Partners, LP*

4833-5352-5241, v. 6

12