```
             UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON


DANIEL DILL, JOSEPH CANFIELD,
and LAWRENCE TAYLOR TULLY, II,

        Plaintiffs,

v.                                    Civil Action No. 2:21-CV-00384

MOUNTAIN VALLEY PIPELINE, LLC,
and EQT CORP. d/b/a EQM
Midstream Partners, LP,

        Defendants.
```

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Mountain Valley Pipeline, LLC and EQT Corporation's Joint Motion to Dismiss Complaint (ECF No. 14), filed September 6, 2021.

### I.   Background

Plaintiffs Daniel Dill, Joseph Canfield, and Lawrence Taylor Tully, II ("plaintiffs") filed their complaint against defendants Precision Pipeline, LLC ("Precision"); Mountain Valley Pipeline, LLC ("MVP"); EQT Corp. ("EQT"); and International Union of Operating Engineers (AFL-CIO) (the "National Union") on July 2, 2021.  Compl., ECF No. 1.

The complaint asserts three causes of action: (I) Breach of Contract against the National Union and Precision,

(II) Tortious Interference against MVP and EQT, and (III) Breach of Duty of Fair Representation against the National Union. Id. at ¶¶ 54-76.

Defendants Precision and the National Union have since been dismissed from this action. See ECF No. 19; ECF No. 24. Accordingly, the only remaining claim in this case is Count II against MVP and EQT.[1]

With respect to the tortious interference claim in Count II, plaintiffs plead the following facts:

The plaintiffs Dill, Canfield, and Tully were employees of Precision and members of the Operating Engineers Union, Local 132 (the "Local Union") and the National Union. Compl. ¶¶ 2-10. On July 11, 2019, plaintiffs were informed by Precision "that they were terminated from their employment at the direction of Defendants MVP or EQT or both." Id. at ¶ 1.

As members of the Local and National Unions, the plaintiffs were subject to a Collective Bargaining Agreement ("CBA"). Id. at ¶ 13. Plaintiffs allege that "[u]nder the CBA, Plaintiffs are allowed certain due process and substantive employment rights that are not available to an employee-at-

---

[1] Plaintiffs have affirmed that Counts I and III do not apply to MVP or EQT. ECF No. 21, at 1 n.1.

will," and that under the agreement, their employer "must generally have 'just cause' to terminate [them]." Id. at ¶¶ 15–16.

Plaintiffs assert that "there were no warnings given nor any form of progressive discipline" prior to the date that "MVP and/or EQT directed Precision to terminate the Plaintiffs." Id. at ¶ 30. Nor were plaintiffs "given any notice whatsoever of any problem with their work performance or safety practices by the inspector of EQT." Id. Accordingly, plaintiffs state they "were all terminated involuntarily, without notice, cause, reason or warning[.]" Id. at ¶ 31.

Plaintiffs further aver that MVP and EQT "were aware of the Plaintiffs['] union membership and generally of their rights under the CBA." Id. ¶ at 42.

Based on the above facts, plaintiffs allege that MVP and EQT "tortuously [sic] interfered with Plaintiffs' rights under the CBA by directing Precision as a party to the CBA to terminate the Plaintiffs without just cause and without affording them their guaranteed rights under the CBA." Id. at 57.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) correspondingly provides that a pleading may be dismissed when there is a "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss, a pleading must recite "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

A district court's evaluation of a motion to dismiss is underlain by two principles. First, the court "must accept as true all of the factual allegations contained in the [pleading]." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555-56). Such factual allegations should be distinguished from "mere conclusory statements," which are not to be regarded as true. Ashcroft v. Iqbal, 556 U.S. 662,

4

678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Second, the court must "draw[] all reasonable factual inferences . . . in the [nonmovant's] favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

### III. Analysis

Plaintiffs' complaint alleges that MVP and EQT tortiously interfered with the Plaintiffs' rights under the CBA by directing their employer to terminate them without just cause. See Compl. ¶¶ 57–64.

MVP and EQT argue that the claim for tortious interference asserted against them must be dismissed because it is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. See ECF No. 15, at 8–10.

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(c).

The Fourth Circuit has recognized that "Section 301 not only provides federal courts with jurisdiction over employment disputes covered by collective bargaining agreements, but also directs federal courts to fashion a body of federal common law to resolve such disputes." McCormick v. AT & T Techs., Inc., 934 F.2d 531 (4th Cir. 1991) (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985)). Section 301 has a powerful preemptive effect, and "'only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective bargaining agreements.'" Id. (quoting United Steelworkers of Am. v. Rawson, 495 U.S. 362, 368 (1990)).

Despite this powerful preemptive effect, not all state law claims are preempted by § 301. "The law is clear that 'an application of state law is preempted by § 301 . . . only if such application requires the interpretation of a collective-bargaining agreement.'" Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp., 977 F.2d 895, 899 (4th Cir. 1992) (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988)).

The inquiry into whether application of the state law requires interpretation of a CBA demands an examination of the elements of the state law cause of action. Id.

6

To establish a prima facie case of tortious interference with a contractual relationship under West Virginia law, plaintiffs must show:

    (1)    existence of a contractual or business relationship or expectancy;

    (2)    an intentional act of interference by a party outside that relationship or expectancy;

    (3)    proof that the interference caused the harm sustained; and

    (4)    damages.

Syl. Pt. 2, Torbett v. Wheeling Dollar Sav. & Trust Co., 314 S.E.2d 166, 167 (W. Va. 1983).

Plaintiffs submit that "the elements of a cause of action for tortious interference do not require interpretation of a collective bargaining agreement." ECF No. 21, at 2. This assertion, however, is not supported by Fourth Circuit caselaw.

In International Union, United Mineworkers v. Covenant Coal, the Fourth Circuit examined the Virginia cause of action for tortious interference and found that determining whether the defendant's intentional interference induced or caused a breach of a contractual relationship "necessitates interpretation" of the CBA. Covenant Coal, 977 F.2d at 899. There the court noted that "[o]nly by interpreting a contract

7

can a court determine whether the contract has been breached." Id.

The same reasoning applies in this case. Inasmuch as a claim for tortious interference under West Virginia law requires the plaintiffs to prove that defendant MVP and EQT interfered with their CBA and that said interference caused the harm alleged (which in this case is a breach of the CBA), the factfinder would be required to interpret the controlling CBA. See id.; Arnold v. Cabot Corp., No. 1:99CV75, 2000 WL 1283078, at *8-9 (N.D.W. Va. May 8, 2000) (finding a claim for tortious interference under West Virginia law was barred by § 301 because "the court would need to look at the CBA to determine the nature of the employment contract with which [the defendants] allegedly tortiously interfered."); see also Kimbro v. Pepsico, Inc., 215 F.3d 723, 727 (7th Cir. 2000) (finding that an employee's tortious interference claims against a supervisor and third party were preempted by § 301 because it was "inevitable" that the trier of fact would have to look to the CBA agreement to determine whether the employee had a contractual right not to be terminated).

Inasmuch as plaintiffs' tortious interference claim against MVP and EQT requires the court to interpret the CBA, it is preempted by § 301.² Accordingly, Count II of the complaint must be dismissed.

## IV. Conclusion

In light of the foregoing, the court ORDERS that Defendant Mountain Valley Pipeline, LLC and EQT Corporation's Joint Motion to Dismiss Complaint (ECF No. 14) be, and hereby is, granted.

The Clerk is directed to transmit copies of this order to all counsel of record and to any unrepresented parties.

ENTER: June 10, 2022

John T. Copenhaver, Jr.
Senior United States District Judge

---

² Plaintiffs submit that "the only remedy the Plaintiffs have against these Defendants, as non-parties to the collective bargaining agreement, is a state law tortious interference claim." ECF No 21, at 3. That may very well be the case. Indeed, in Covenant Coal the court noted "the apparent paradox" of their decision, which found that the LMRA both bars a federal cause of action for tortious interference and preempts state law causes of action for the same. Covenant Coal, 977 F.2d at 895–96. The lack of an alternative remedy, however, does not change the court's conclusion that a trier of fact would have to consider the terms of the CBA to determine whether MVP and/or EQT tortiously interfered with it.

9